**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DAVID SCOTT COLLINS,**

     **Plaintiff,**

**vs.**                         **Case No. 4:17cv46-WS/CAS**

**JARED F. MILLER, WAKULLA
COUNTY SHERIFF, in his official
capacity, and DEPUTY JOSHUA M.
LANGSTON, Badge #W208, in his
individual capacity,**

     **Defendants.**
_____/

## REPORT AND RECOMMENDATION

On July 25, 2018, after the conclusion of the discovery period,
Defendants Miller and Langston filed motions for summary judgment with
exhibits, ECF Nos. 21, 20, including exhibits filed under seal.  *See* ECF
Nos. 22, 23.  On September 4, 2018, Plaintiff filed a response to Defendant
Langston's motion for summary judgment.  ECF No. 32.  On September 6,
2018, Plaintiff filed a response to Defendant Miller's motion for summary
judgment.  ECF No. 34.  Defendants filed replies to the responses on
September 13, 2018.  ECF Nos. 35, 36.

**Allegations of the Complaint**

Plaintiff filed this action under 42 U.S.C. § 1983 against two defendants.  He alleged that he was arrested on September 18, 2012, for an August 24, 2012, battery of his wife pursuant to warrant obtained on September 13, 2012, by Defendant Joshua M. Langston, a deputy sheriff employed by the Wakulla County Sheriff's Office.  ECF No. 1.  Plaintiff alleged that Defendant Langston obtained the warrant by knowingly withholding vital, exculpatory information, by knowingly advancing false information to the court, and without probable cause or due process of law. *Id.*  Defendant Langston is sued in his individual capacity.  *Id.*

Plaintiff also sued the Sheriff of Wakulla County, originally named as Charles W. Creel, but who was replaced by current Defendant Sheriff Jared F. Miller.  *Id.*; ECF Nos. 3, 10.  Plaintiff alleged that Defendant Miller, in his capacity as Sheriff, employed Defendant Langston and he attributes Langston's alleged misconduct to Defendant Miller.  ECF No. 1.  Defendant Miller is sued in his official capacity.  ECF No. 1.

Plaintiff further alleged that both Defendants acted in bad faith with malicious purpose, deprived him of liberty without due process, detained him in custody against his will, and refused to allow him to make telephone calls after he was arrested.  *Id.*  He further alleged that his arrest was

accomplished without lawfully issued process.  *Id.*  Plaintiff alleged that he was subsequently tried on February 13, 2013, and found not guilty of the crime for which he was arrested.  *Id.*

**Legal Standards Governing a Motion for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323; *see also* Beard v. Banks, 548 U.S. 521,

529 (2006).  The non-moving party must then show through affidavits or other Rule 56 evidence "that there is a genuine issue for trial."[1]  *Id.*

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine' " and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (some citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to

---

[1] Under Rule 56(e), the nonmoving party is required to go beyond the pleadings and, by the party's own affidavits or by depositions, answers to interrogatories, and admissions on file, must designate specific facts showing that there is a genuine issue for trial.  *See* Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(c), (e).  Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324.

determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 252 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Hickson Corp., 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 252).

All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."), but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co., 475 U.S. at 587 (other citation omitted).

**The Relevant Rule 56(e) Evidence**

Defendant Langston's Exhibit 1 is a Wakulla County Sheriff's Office "Offense Report" noting a report date and time of August 25, 2012, at 1:17 a.m.  Langston Ex. 1.[2]  The report indicates that Wakulla County Sheriff's Deputy Rachel Oliver responded to a report of a disturbance that occurred in the late evening hours of August 24, 2012.  The complainant, the alleged victim's daughter, reported that her mother was beaten by Plaintiff earlier in the night.  Langston Ex. 1 at 1.  Deputy Oliver spoke with the alleged victim, who stated she had been at Dux Liquors, a bar, when Plaintiff, her husband, showed up and angrily ordered her to get in his vehicle.  She said that once in the vehicle, Plaintiff hit her repeatedly in the back of the head and pulled her hair, and hit her on her left side near her breast.  Langston Ex. 1 at 2.

The Offense Report also stated, "It should be noted, [the alleged victim] showed where her hair had been pulled out and produced hair when she ran her hand through her hair, however I had difficulty positively locating any lumps."  Langston Ex. 1 at 2.  The alleged victim also reported that Plaintiff hit her in the side of her face "accidentally" during the

---

[2] The Langston Exhibits were filed with Langston's motion for summary judgment and appear at ECF Nos. 20-1 through 20-15.

encounter.  *Id.*  The victim provided an affidavit, dated August 25, 2012,

stating:

> At approximately 9:15 my husband showed up at Dux where I
> was with a co-worker Stacey Nelson.  He advised me if I
> wanted a place to stay I needed to get in the car.  I did & he
> proceeded to hit me repeatedly in the head and pull my hair.  I
> then proceeded to the house & when afforded the opportunity
> left on foot & walked to the Wildwood Inn where I contacted my
> daughter to please come get me.

Langston Ex. 2.  Plaintiff also provided an affidavit dated August 25, 2012,

which stated in full, "I went to Dux, picked up my wife & we argued in car &

at home.  She later left."  Langston Ex. 3.  Both sworn affidavits were given

to Wakulla County Sheriff's Deputy Billy Metcalf.

In a video interview of the alleged victim, she described holding her

arms over her head to fend off the blows to the back of her head, and

showed deputies a bruise on her arm that she said she got in the incident.

Langston Ex. 4.  She also stated that she had a bruise on her left breast

where she had been struck, and provided photographs of both bruises.

Langston Ex. 4 (video); Ex. 6 (photos).  In a video interview of Plaintiff by

Deputy Langston dated September 4, 2012, Plaintiff denied ever being in a

physical altercation with the alleged victim.  Langston Ex. 1 at 4; Ex. 7.

In that interview, Plaintiff stated:

> . . . she was at Dux, she knows that we don't do that kind of
> thing. . . .  I didn't know where she was.  I hadn't heard from

her.  I tried to call her, there was no answer.  So yah, I saw her
at Dux, we argued about it, we went home, she left, she walked
down the driveway and the next thing you know three to four
hours later, the police were at my door.

Plaintiff's Video Ex. 7.  In a deposition taken in 2017, Plaintiff further

explained that the alleged victim left Dux with him in his truck and "[o]f

course we argued" about a number of things.  Langston Ex. 8 (Plaintiff's

Deposition at 50-56).  He said he told the officers that night that the report

he hit his wife was false.  *Id.* at 55.

Wakulla County Sheriff's Deputy William Poole filed a supplemental

narrative report on August 28, 2012, in which he stated that the alleged

victim told him that she did not wish the agency to proceed with the case

because she did not want her husband's family to be mad at her.  Langston

Ex. 1 at 2.  In a supplemental report dated September 5, 2012, Deputy

Langston stated that "the victim later contacted the WCSO [Wakulla County

Sheriff's Office]" and "recanted her request for the case to be dropped."

Langston Ex. 1 at 3.  The supplemental narrative, referring to an August 31,

2012, interview with the alleged victim, also stated:

The victim also provided this Detective with medical
documentation where she was evaluated by a physician the
day after the incident occurred.  The medical documentation
noted multiple injuries to the victim which are as follows:
Multiple contusions to the head and chest and acute cervical
strain.  The injuries coincide with the statements given by the
victim as to the beating she sustained by the suspect.

*Id.* Deputy Langston's supplemental narrative stated that it was after receiving the medical documentation that he scheduled the September 4, 2012, interview with Plaintiff. Langston Ex. 1 at 4; Plaintiff's Video Ex. 7.

Devon Lowe, the alleged victim's daughter, reported that on the night of the incident, her mother called her to pick her up because Plaintiff had beaten her. Langston Ex. 1 at 4; Langston Ex. 9 (Lowe recording). Lowe stated that her mother's hair was falling out and her left cheek was red. *Id.*

Deputy Langston also noted in his September 5, 2012, supplemental narrative that "[t]he victim referenced prior domestic incidents dating back ten years. I searched the WCSO computer system and found two prior cases one in 2004 and one in 1997." Langston Ex. 1 at 4. In a supplemental narrative report dated September 14, 2012, after a warrant had been obtained, Deputy Langston noted that he reviewed the warrant and noticed an error in the offense report. He explained:

> I noticed there was an error in the report made by this Detective. The error was regarding prior Domestic reports made to the WCSO which were referenced by this Detective. This Detective noticed the dates of the incidents were 2004 and 1997. However, the correct dates in the WCSO computer system were 2002. Also the report in 2002 was generated twice in the computer therefore it appeared there were two separate incidents however, it was the same report. The victim however, referenced a report in 1997 during her interview. A

search of a WCSO computer system did not show at the
current date of 09-14-2012.[3]

> After realizing this error, I made my Lieutenant C.L.
> Morrison aware and narrated this supplement to correct the
> error.  I then made contact with the Assistant State Attorney
> John Wilson and spoke with him about the mistake, asking . . .
> what needed to be done to correct the error.  ASA Wilson
> advised to notate the error in the incident report.

> The error is typographical and does not change the
> findings of this investigation.

Langston Ex. 1 at 5.

The probable cause affidavit was submitted on September 12, 2012,
by Deputy Langston after review and approval by his supervisor and by the
State Attorney's Office.  Langston Ex. 1 at 4; Ex. 10 (warrant); Ex. 11
(warrant review).  In the probable cause affidavit, Deputy Langston said he
was contacted on August 31, 2012, by Lieutenant Bruce Ashley requesting
a follow-up investigation of the case and informing Langston that Deputy
Poole had closed the investigation at the alleged victim's request.  The
affidavit noted that the investigation was then reopened when the alleged
victim recanted her request.  Langston Ex. 10 at 2.  The probable cause
affidavit advised that the alleged victim reported that her husband pulled
her hair and struck her in the back of her head.  After the alleged victim

---

[3] In his sworn affidavit dated July 26, 2018, Deputy Langston clarified that the
alleged victim "referenced a prior domestic report in 1997 during her recorded interview.
A search of the Wakulla County Sheriff's Office computer system did not show the prior
1997 prior report."  Langston Ex. 23.

arrived home, she fled on foot to the Wildwood Inn where she called her daughter to pick her up.  *Id.*  Although the responding deputy was unable to identify bruising or other marks, the alleged victim showed the deputy hair that she said had been pulled out.  Langston Ex. 10 at 2-3.  The alleged victim reported Plaintiff "missed the back of her head and struck her in the face," after which he panicked and said, "Let me see your f-----g face."  *Id.* at 3.  The affidavit did not expressly state that the alleged victim told the deputy that the blow to her face was "accidental."

The probable cause affidavit advised that medical records produced by the alleged victim noted injuries which coincide with the statements given by the victim.  *Id.*  The affidavit stated that the medical visit occurred "the day after the incident," reciting the same statement as appeared in the Offense Report in Deputy Langston's supplemental narrative dated September 5, 2012.  Langston Ex. 1 at 3.  Deputy Langston's probable cause affidavit did not note that the medical records provided by the alleged victim were dated August 26, 2012, and that the alleged victim stated in her recorded interview that she saw medical personnel on that date rather than on August 25, 2012, which was technically the day after the incident.  Langston Ex. 4.

The affidavit informed the court that when Plaintiff was interviewed, he denied any physical altercation with the alleged victim.  *Id.*  However, Deputy Langston advised that he also spoke with Stacy Nelson, a friend of the alleged victim who was with her at Dux.  Nelson reported that that the alleged victim and her daughter came to Nelson's house after the incident and the victim displayed hair that she said Plaintiff pulled from her head.[4]  *Id.*

Deputy Langston also interviewed the alleged victim's daughter, Devon, who reported that she received a telephone call from her mother late on August 24, 2012, asking her to come pick her up at the Wildwood Inn.  Langston Ex. 10 at 4; Ex. 1 at 4.  Devon reported to Langston that she observed injuries to her mother, such as hair falling out and a mark by her left eye.  *Id.*  The probable cause affidavit also noted that Devon reported to Deputy Langston that this was not the first time Plaintiff had beaten her mother.  *Id.*  Langston then noted in the affidavit, as he did in the offense report, that the victim referred to two prior cases, mentioning the incorrect

---

[4]  This information concerning the interview with Nelson was also contained in the Offense Report, in Deputy Langston's Supplemental Narrative of September 5, 2012.  *See* Langston Ex. 1 at 4.

dates of 2004 and 1997.[5]  Langston Ex. 10 at 4.  On September 13, 2012, a judge issued a warrant for Plaintiff's arrest.  Langston Ex. 10 at 1.

Plaintiff does not object to the exhibits filed by Defendants and provides one exhibit: The Wakulla County Sheriff's Office General Order regarding domestic violence investigations dated October 1, 2011, which provides in pertinent part that "[d]omestic violence investigations will be actively pursued by the Sheriff's Office and an arrest shall be the preferred response in situations in which probable cause exists."  Collins Ex. 16 at 1 (ECF No. 32-1 at 1).  The General Order also states that "[a]rrest is a preferred response to domestic violence when probable cause exists.  That is, when probable cause has been established that an act of domestic violence has occurred, an arrest should be made . . . ."  *Id.* at 4.  The General Order also provides that "[f]actors which should NOT be considered in determining whether an arrest will be made include: . . . Victim's request that an arrest not be made . . . ."  *Id.*

Deputy Langston filed the sworn probable cause affidavit on September 12, 2012.  An arrest warrant was issued by a judge on

---

[5] Deputy Langston's interview with Devon was documented in the Offense Report in his supplemental narrative of September 5, 2012.  Langston Ex. 1 at 4.  The error in dates of prior violence was not cited until September 14, 2012, after the probable cause affidavit was submitted.

September 13, 2012, and Plaintiff was arrested.  Jury trial was held and

Plaintiff was found not guilty on February 20, 2013.[6]

**Discussion**

Plaintiff's complaint asserts two counts.  ECF No. 1 at 7-13.  Count 1

asserts that Defendant Joshua M. Langston, in his individual capacity,

provided false, incomplete, and misleading information to obtain an arrest

warrant without probable cause.  ECF No. 1 at 11.  Plaintiff also alleges

Defendant Langston was under the authority and control of the Wakulla

County Sheriff's Office, and thus, under the authority and control of the

Defendant Sheriff, Jared F. Miller.  *Id.*

Count 2 asserts that Plaintiff was arrested and detained by

Defendants in bad faith, with malicious purpose, and without lawfully issued

process.  ECF No. 1 at 12.  However, Plaintiff now concedes in his

response to the motions for summary judgment that because he was

arrested pursuant to warrant, both Defendants are entitled to summary

judgment on this false arrest claim.  ECF No. 32 at 27 (citing <u>Carter v.</u>

<u>Gore</u>, 557 F. App'x 904, 906 (11th Cir. 2014) (unpublished) (holding that

---

[6] The trial transcript was not made available.  Plaintiff notified the Court in his response that the proceedings were sealed on October 29, 2013, pursuant to defense counsel's motion to seal the proceeding after the not guilty verdict.  *See* ECF No. 32 at 3 n.2 ECF No. 20-14 (Langston Ex. 14).

issuance of a warrant, even an invalid one, "constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest) (citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994) (distinguishing false arrest from malicious prosecution). Accordingly, summary judgment should be granted on Count 2 in favor of Defendants Langston and Miller.

**Malicious Prosecution**

The parties agree that Count 1 is a § 1983 claim for malicious prosecution. Malicious prosecution is a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983. <u>Wood v. Kessler</u>, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Id.* In Florida, to prove malicious prosecution, the plaintiff must prove each of six elements: (1) an original judicial proceeding was commenced or continued; (2) the defendant was the legal cause of the original proceeding; (3) bona fide termination of the judicial proceeding in favor of the plaintiff; (4) absence of probable cause for the original proceeding; (5) malice on the part of the present defendant; and (6) damages to plaintiff as a result of the

original proceeding.  Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  The failure of a plaintiff to establish any one of these elements is fatal to the claim of malicious prosecution.  *Id.*; *see also* Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994).  Plaintiff meets elements (1) and (3), but cannot meet elements (2), (4), or (5).

A defendant's conduct can meet the requirement of element (2)—that the defendant officer was the legal cause of the original proceeding—if he or she exerted pressure or influence, or knowingly presented false statements, that unduly influenced the authorities to prosecute.  *See* McCraney v. Barberi, 677 So. 2d 355, 357 (Fla. 1st DCA 1996).  Plaintiff contends that Defendant Langston improperly sought to influence the judge and prosecutor by failing to include in the probable cause affidavit a statement that Deputy Oliver did not have enough information to make an arrest and that the case would be difficult to pursue; that the alleged victim described the blow to her face as "accidental;" that the alleged victim told two versions about the Plaintiff attempting to take away her telephone; that the medical examination did not occur the day after the incident, as Defendant Langston stated in the warrant affidavit, but was two days later; that Plaintiff's daughter told officers Plaintiff has never been violent; that the alleged victim admitted to having alcohol on the night of the incident; that

the first call to law enforcement was four hours after the alleged incident; and that the probable cause affidavit erroneously referred to prior abuse in 1997 and 2004. ECF No. 32 at 19-21.

Whether the alleged victim gave conflicting accounts of Plaintiff attempting to take her telephone and the statement by Deputy Poole that on the night of the complaint not enough information was available for an arrest at that time—as well as statements by Plaintiff's daughter that he was never violent—while possibly relevant to a trial defense, has not been shown to be information that was required to be in the probable cause affidavit. Even with the omissions noted by Plaintiff, the affidavit still adequately provided probable cause. For example, it is not disputed that Defendant Langston stated in his probable cause affidavit that the victim reported that at one point the Plaintiff "missed" hitting her in the back of her head and hit her face, causing him to panic, which conveys the information that the blow to her face was not intentional. Further, whether hit in the back of the head or the face, the victim indicated that the Plaintiff intended to hit her.

Defendant's Langston's statement about the years in which prior abuse occurred, while erroneous, has not been shown by any evidence to have unduly influenced the judge to issue the warrant. Plaintiff even

argues as much, asserting that statements about an incident "years or even months ago is not relevant in determining probable cause for the incident that occurred on August 24, 2012." ECF No. 32 at 17. The probable cause affidavit contained ample information to support issuance of a warrant without any reliance on incidents of prior abuse.

Plaintiff provides no evidence to support his allegation that false statements were deliberate or made with any improper purpose. Statements made in support of a warrant need not actually be true or completely correct, but they must be "truthful" in the sense that the information is believed or accepted to be true by the affiant. Franks v. Delaware, 438 U.S. 154, 166 (1978); Carter v. Gore, 557 F. App'x 904, 908 (11th Cir. 2014) (unpublished) (same, citing Franks). Officers may not obtain warrants based on perjurious or recklessly false statements. Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994).

Defendant Langston filed an affidavit in support of his motion for summary judgment stating in pertinent part: "There was nothing in the 'Statement of Probable Cause/Narrative' that I submitted for the judge, in order to obtain a warrant for Scott Collins arrest for the crime of battery, that I did not believe or accept as true." Ex. 23. Plaintiff has not provided any evidentiary support to show that Defendant Langston made perjurious

or recklessly false statements that he knew or believed to be untrue and which unduly influenced the authorities to prosecute.  In fact, Plaintiff stated in his deposition that it was his wife who was "making stuff up and lying" and not Defendant Langston, who was just "reading this stuff, and writing this stuff, and interviewing and seeking this stuff."  Ex. 8 at 16.  Plaintiff said, "He writes it after he reads it in that report is what I'm saying."  *Id.*  Further, none of the asserted omissions and errors, even if corrected in the probable cause affidavit, would have eliminated the legal significance of the sworn statement by the victim that Plaintiff hit her in the back of her head and pulled her hair, for which corroborating undisputed facts were included in the probable cause affidavit.

Plaintiff has failed to provide any evidence to show that either Defendant Langston or Defendant Miller was the legal cause of the original proceeding by exerting undue pressure or influence or knowingly presenting false statements that unduly influenced the authorities to arrest or prosecute.  Because Plaintiff fails to satisfy element (2) of the claim of malicious prosecution, that claim must fail.

In addition, Plaintiff has not provided evidentiary support for element (4) of the tort of malicious prosecution—absence of probable cause.  To the contrary, the undisputed evidence supports a finding of probable cause.

"[T]he existence of probable cause defeats a § 1983 malicious prosecution claim." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010). "[A] police officer cannot be liable for malicious prosecution if the arrest warrant was supported by probable cause." Black v. Wigginton, 811 F.3d 1259, 1267 (11th Cir. 2016). " 'Probable cause' means 'facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed . . . an offense.' " *Id.* (quoting Grider, 618 F.3d at 1257). Probable cause does not require the officer to have evidence to prove the crime beyond a reasonable doubt. Lee v. Geiger, 419 So. 2d 717, 719 (Fla. 1st DCA 1982). Nor is a probable cause affidavit required to eliminate all possible defenses to the crime. State v. Riehl, 504 So. 2d 798, 800 (Fla. 2d DCA 1987). Officers are not required to sift through conflicting evidence or resolve credibility issues, so long as the totality of the circumstances presents a sufficient basis for believing that an offense has been committed. Arnold Rogers v. City of Orlando, Fla., 660 F. App'x 819, 825 (11th Cir. 2016) (unpublished) (citing Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002). Officers are generally entitled to rely on a

victim's report to support probable cause.[7]  Rankin v. Evans, 133 F.3d

1425, 1441 (11th Cir. 1998).

"For probable cause to exist, both federal and Florida law say that an

arrest must be objectively reasonable based on the totality of the

circumstances."  United States v. Lyons, 403 F.3d 1248, 1253 (11th Cir.

2005) (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)).  "This

standard is met when the facts and circumstances within the officer's

knowledge, of which he or she has reasonably trustworthy information,

would cause a prudent person to believe, under the circumstances shown,

that the suspect has committed, is committing, or is about to commit an

offense."  *Id.* (citation and internal quotation marks omitted).  Thus, the

question is not whether the Plaintiff committed the crime or had any

defenses to the allegations, but whether given the totality of the

circumstances, a reasonable officer with the same knowledge could have

believed probable cause existed to arrest the plaintiff.  *See* Michigan v.

DeFillippo, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not

depend on whether the suspect actually committed a crime; the mere fact

---

[7] Even an imperfect investigation is insufficient to prove malicious prosecution.
Lee, 419 So. 2d at 719.

that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

Plaintiff was arrested for battery, which requires proof that the person actually and intentionally touched or struck another person against their will or intentionally caused bodily harm to another person. § 784.03, Fla. Stat. (2012). The undisputed facts cited by Defendant Langston in the probable cause affidavit—including the undisputed fact that the alleged victim swore under oath that she was hit by Plaintiff, that she showed evidence of being hit to her daughter and a friend who gave statements, that she provided photographs of bruising she said was caused by being hit, and provided medical records—comprised a reasonable basis for the court to conclude that there was a "substantial chance" that criminal activity occurred, which is sufficient for a finding of probable cause. *See* Myers v. Bowman, 713 F.3d 1319, 1326 (11th Cir. 2013). Because Defendant Langston had sufficient evidence to support a finding of probable cause that Plaintiff committed a battery, Plaintiff cannot meet element (4) of the test for malicious prosecution and the claim must fail.

Finally, Plaintiff has not provided evidence to meet element (5) of the test for malicious prosecution—malice on the part of the defendant—or evidence to create a factual dispute about that element. Plaintiff cites the

facts that certain Dux Liquors' surveillance videos were lost and never provided to the defense and that certain text messages were not properly preserved by the Sheriff's Office. Plaintiff does not allege that either Defendant was responsible for the loss of the videos or failure to properly preserve the text messages. Moreover, these facts are not in dispute and provide no evidentiary basis to support the allegations of malice or ill will.[8] Plaintiff even testified in his deposition that he had no reason to believe that Langston had any ill will against Plaintiff. Langston Ex. 8 at 110. Legal malice may be inferred from lack of probable cause, gross negligence, or great indifference to persons, property, or rights of others. Alamo Rent-A Car, 632 So. 2d at 1357. However, as determined above, Plaintiff has not produced evidence demonstrating lack of probable cause, gross negligence, or great indifference.

In sum, the ultimate decision to issue the warrant was the responsibility of the judge and the decision to prosecute was the responsibility of the prosecutor. Probable cause supported the arrest warrant. Plaintiff has not provided any evidence of actual or legal malice or

---

[8] Defendant Langston filed a sworn affidavit in which he states in pertinent part that he did not purposely destroy the texts that did not download properly and did not purposely destroy the videos of the Dux Liquors interior and parking lot, and that the contents of the videos and the texts, which he had reviewed, did not affect his belief that probable cause existed for the arrest. Ex. 23.

ill will, or evidence to show that erroneous statements or omissions in the probable cause affidavit were deliberate and unduly influenced the judge to issue the warrant or the prosecutor to prosecute the case. Accordingly, Plaintiff's malicious prosecution claim against Defendants Langston and Miller fails as a matter of law and the Defendants are entitled to summary judgment on Count 1.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motions for summary judgment filed by Defendant Joshua M. Langston, ECF No. 20, and Defendant Jared F. Miller, ECF No. 21, be **GRANTED**, and that judgment be entered in favor of Defendants and against Plaintiff.

**IN CHAMBERS** at Tallahassee, Florida, on December 7, 2018.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not**

control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.